UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
CIVIL ACTION NO. _____

KEN HODAK                                                                 PLAINTIFF

v.                              **COMPLAINT**

MADISON CAPITAL MANAGEMENT, LLC;

      Serve:  505 Park Avenue, 18th Floor
             New York, New York 10022
             via Kentucky Secretary of State

MADISON INVESTMENT PARTNERS, 24 LLC;

      Serve:  6143 South Willow Drive, Suite 200
             Greenwood Village, Colorado 80111
             via Kentucky Secretary of State

UAR GP SERVICES, LLC;

UNITED AMERICAN RESOURCES, LP;

UAR GP HOLDCO, LLC;

UAR MLP, LP and

UAR GP, LLC                                                               DEFENDANTS

      Serve:  CSC-Lawyers Incorporating Service Company
             421 West Main Street
             Frankfort, Kentucky 40601

* * * * * * * *

The Plaintiff, Ken Hodak (hereinafter "Hodak"), through counsel, for his Complaint

against Defendants, Madison Capital Management, LLC, UAR GP Services, LLC, United

American Resources, LP; UAR GP Holdco, LLC; UAR MLP, LP; and UAR GP, LLC, states as

follows:

**INTRODUCTION**

1.     This is a civil action for a violation of Kentucky Revised Statutes Chapter 337 and the common law, for damages arising therefrom in excess of the minimum jurisdiction of this Court.

2.     At all times relevant hereto, Plaintiff is, and was, a Tennessee citizen, who currently resides at 12000 Mallard Bay Drive, Knoxville, Tennessee 37922, and who was employed by Defendants Madison Capital Management, LLC (hereinafter "Madison Capital") and Madison Investment Partners 24, LLC (hereinafter "Madison Investment"), UAR GP Services, LLC (hereinafter "UAR").  UAR's companies consist of United American Resources, LP, UAR GP Holdco, LLC, UAR MLP, LP and UAR GP, LLC (collectively "UAR Companies").  As set forth in Plaintiff's Employment Agreement, it is specifically stated that UAR Companies and their affiliates employed Plaintiff as Chief Executive Officer of the UAR Companies and affiliates, which includes United American Resources, LP, UAR GP Holdco, LLC, UAR MLP, LP and UAR GP, LLC as set forth above.  (*See* Employment Agreement attached hereto as **Exhibit A**).

3.     Madison Capital's principal place of business is located at 505 Park Avenue, 18th Floor, New York, New York 10022.

4.     Madison Investment's principal business is located at 6143 South Willow Drive, Suite, 200, Greenwood Village, Colorado 80111.

5.     UAR is located at 269 W. Main Street, Suite 700, Lexington, Kentucky 40507.

6.     At all times relevant hereto, Defendant Madison Capital, is and was a New York company doing business in the Commonwealth of Kentucky.  At all times relevant hereto,

Defendant Madison Investment, is and was a Colorado company doing business in the
Commonwealth of Kentucky.  This Court has jurisdiction over Madison Capital and Madison
Investment pursuant to Kentucky's long-arm statute as codified in KRS 454.210. At all times
relevant hereto, Defendant UAR is and was a Kentucky company, authorized and doing business
in the Commonwealth of Kentucky and was wholly-owned by, and operated as, a single entity
with Madison Capital and Madison Investment for purposes as alleged herein.

       7.    UAR is wholly-owned and managed by Madison Capital and Madison
Investment.  Bryan Gordon (hereinafter "Gordon") is Managing Director and Chief Investment
Officer for both Madison Capital and Madison Investment.  Gordon acted with actual and
apparent authority for Madison Capital, Madison Investment and UAR as Gordon signed off on
Plaintiff's Employment Agreement and Non-Competition, Confidential Information and
Invention Agreement (hereinafter "Non-Competition Agreement") with UAR.  (*See* **Exhibit A**
and Non-Competition Agreement attached hereto as **Exhibit B**).

       8.    Further, Gordon acted with actual and apparent authority for Madison Capital,
Madison Investment and UAR as its Managing Director, signed off on a letter to Plaintiff
wherein Gordon guarantees and indemnifies obligations of UAR relating to Plaintiff's
Employment Agreement with Plaintiff up to a maximum of $10,000,000.00.  (A copy of this
guarantee agreement is attached hereto as **Exhibit C**).

       9.    Madison Capital provided employment compensation to Plaintiff by reimbursing
him for employment-related expenses in accordance with his Employment Agreement.  (*See*
**Exhibit A** at p. 2).

       10.    Plaintiff was both hired and fired by Gordon, who upon information and belief is

either employed by or an agent of Madison Capital and Madison Investment.  Madison Capital,

Madison Investment and UAR (including UAR Companies) have acted as one entity for purposes

of Plaintiff's employment and his contractual agreements.

11.     Madison Capital, Madison Investment and UAR are alter egos, disregarded any

separation of corporate existence, shared in a joint venture relationship with regard to the

employment of Plaintiff and otherwise mutually shared in the benefits and expenses of the

employment relationship.  Moreover, Madison Capital, Madison Investment and UAR accepted,

adopted and ratified the Employment Agreement and Non-Competition Agreement with Plaintiff.

12.     Based on the aforementioned reasons, Madison Capital, Madison Investment and

UAR jointly employed Plaintiff as that term is defined under KRS Chapter 337 and as that term

is utilized under Kentucky common law.  Madison Capital, Madison Investment and UAR were

prohibited from engaging in the unlawful acts and practices as described more fully herein.

13.     UAR's registered agent for receiving service of process (including its companies

and affiliates) is CSC-Lawyers Incorporating Service Company, 421 West Main Street,

Frankfort, Kentucky 40601.

14.     Because Plaintiff seeks damages in this action in excess of $75,000 and because

there is complete diversity of citizenship among the Plaintiff and Defendants, this Court has

jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.A. §1332.

15.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) in that the

events giving rise to these claims occurred, in whole and/or in part, in this judicial district.

## FACTS

16.     UAR's Chairman of the Board, Chauncey Curtz (hereinafter "Curtz") first contacted Plaintiff in December of 2005 regarding a position at UAR as Chief Operating Officer (hereinafter "COO").  Plaintiff declined the position of COO as he had just begun working for National Coal Corporation (hereinafter "National Coal") in October of 2005.  Plaintiff had received a signing bonus with National Coal in the amount of $85,000 which would be forfeited if he left National Coal within his first year of employment.

17.     In January of 2006, UAR hired Ken Woodring as its CEO.  Throughout February and March of 2006, Woodring called Plaintiff numerous times encouraging him to work with UAR.  In May of 2006, Woodring resigned as CEO and Madison and Curtz approached Plaintiff for the purpose of hiring him as CEO for UAR and Madison.  During Plaintiff's interview, he indicated his background and expertise in coal resources but stated that he did not have a strong financial background.  Both Madison and Curtz discounted Plaintiff's concerns regarding this position.

18.     Plaintiff entered into the Employment Agreement with UAR on May 12, 2006. Plaintiff was employed as its CEO.  (*See* **Exhibit A**).

19.     As a result of Plaintiff's expressed concerns regarding his financial position and his having to repay National Coal the $85,000 signing bonus he received, UAR agreed to loan Plaintiff $100,000.  The terms and conditions of the loan from UAR were set forth in Plaintiff's Employment Agreement.  (*See* **Exhibit A** at p. 3).  Under the terms of the Employment Agreement, if Plaintiff was continuously employed by UAR, Madison Capital and Madison Investment (hereinafter "Madison") through the maturity of the promissory note (24 months) then UAR would forgive the loan in its entirety.  If Plaintiff's employment was terminated for

reasons other than for cause, then the loan amount would be reduced.  If UAR/Madison

terminated Plaintiff for cause prior to 24 months of continuous employment then the loan

forgiveness provision was null and void and there was no partial loan forgiveness.

20.     The terms and conditions of the Severance provision of the Employment

Agreement required that UAR pay Plaintiff a severance benefit equal to the sum of his base

salary then in effect ($250,000) to be paid during the severance period and an amount equal to

the most recent Discretionary Incentive Bonus.  Moreover, medical, dental and vision benefits

were to be provided, as well as a vehicle, and Plaintiff was to be relieved of any remaining loans

under the Employment Agreement (*See* **Exhibit A** at p. 3, 10).  Additionally, UAR/Madison

agreed to pay Plaintiff an income tax "gross-up" payment so that he would be made whole for the

federal and state income and employment actual tax impact for the forgiveness of the loan.  (Id.

at p. 3).

21.     Plaintiff also entered into a Non-Competition Agreement with UAR/Madison on

May 12, 2006.  (*See* **Exhibit B**).

22.     Also, Plaintiff was concerned about the financial viability of the newly-formed

UAR group, and in order to induce Plaintiff and to allay such concerns, Defendant Madison

Investment, acting by and through its Director Brian Gordon, agreed to guarantee and/or

indemnify the payment of sums due Plaintiff under his Employment Agreement.

23.     On September 29, 2006, Plaintiff received a telephone call from Madison's

counsel notifying him that he had been terminated with no explanation other than they "were

going in a new direction."  Prior thereto, including the date of termination, Plaintiff was not

notified or advised, either verbally or in writing, that his job performance was insufficient or that

he would be terminated, or that he had performed poorly in any aspect of his job.

## COUNT I

### Violation Of KRS Chapter 337, Wages And Hours

24.     Plaintiff reiterates and incorporates paragraphs 1-23 as if fully set forth herein.

25.     In accordance with KRS 337.055, "Any employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him; not later than the next normal pay period following the date of dismissal or voluntary leaving or fourteen (14) days following such date of dismissal or voluntary leaving whichever last occurs."  Additionally, KRS 337.010 defines "wages" to include severance or dismissal pay.

26.     Under the terms of Plaintiff's Employment Agreement and under KRS Chapter 337, Plaintiff is entitled to severance/dismissal pay of $250,000.  (*See* **Exhibit A** at p. 10).

27.     Defendants UAR, Madison Capital and Madison Investment acted in bad faith, have not paid Plaintiff his severance pay although he was terminated over three (3) months ago. Thus, Defendants are clearly in violation of KRS 377.055.

28.     KRS 337.385 directs that any employer who pays any employee less than wages to which the employee is entitled is liable to the employee affected for the full amount of such wages, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees.

29.     Because Defendants have violated the aforementioned statutes, Plaintiff is entitled to the full severance obligations as set forth in the Employment Agreement, plus liquidated damages of the same amount of severance ($250,000) owed to Plaintiff, plus costs and reasonable attorney's fees under KRS Chapter 337.

-7-

## COUNT II

### Breach of Contract

30.     Plaintiff reiterates and incorporates paragraphs 1-29 as if fully set forth herein.

31.     Because Defendants contend that Plaintiff was terminated "for cause," under the terms of the Employment Agreement, under the Employment Agreement, Defendants were required to have provided thirty (30) days prior notice of any performance deficiency to allow Plaintiff time to cure any such deficiency, prior to being able to invoke a "for cause" dismissal. (*See* **Exhibit A** at p. 8).  Plaintiff was never provided any warning or admonishment that his job performance was deficient in any manner including as of the date of his termination. Additionally, such performance deficiencies were required to be in writing under the terms of the Employment Agreement but Plaintiff never received any such written notice.

32.     Plaintiff is entitled to reimbursement for expenses incurred with respect to the vehicle he purchased pursuant to the terms and conditions of his Employment Agreement.  (*See* **Exhibit A** at p. 3).

33.     The actions of Defendants described above constitute a breach of contract. Plaintiff is entitled to all remedies at law, both equitable and compensatory, for Defendants' breach of contract, including but not limited to, recovery of Plaintiff's reasonable attorneys' fees and costs.

## COUNT III

### Declaratory Judgment Under KRS Chapter 418

34.     Plaintiff reiterates and incorporates paragraphs 1-33 as if fully set forth herein.

35.     Under KRS 418.045, any person interested under an instrument of writing,

including a contract, may apply for and secure a declaration of his right or duties.

36.     Because interpreting the validity of contracts and the rights and duties of the parties involved in another primary function of the declaratory judgment, Plaintiff requests that this Court declare the Non-Competition Agreement entered into on May 12, 2006 between Plaintiff and Defendants as invalid and unenforceable because it is overly broad and violates public policy.  Additionally, Plaintiff requests that this Court declare that Defendants breached the Employment Agreement and as a result may not enforce the Non-Competition Agreement. Moreover, Plaintiff requests that this Court award any/all monetary and/or equitable relief for such breach(es) including Plaintiff's reasonable attorneys' fees and costs.

## COUNT IV

### Fraud

37.     Plaintiff reiterates and incorporates paragraphs 1-36 as if fully set forth herein.

38.     The above-described conduct of Defendants constitutes common law fraud.

39.     Upon information and belief, Defendants induced Plaintiff to leave his employment with National Coal and enter into the Employment Agreement with Plaintiff, which it never intended to fulfill.

40.     Said affirmative statements and material omissions by Defendants were false and fraudulent and were designed to induce Plaintiff to enter into the Employment Agreement and Non-Competition Agreement.  Defendants knew or should have known that the statements were false, fraudulent, misleading and were relied upon by Plaintiff.

41.     Defendants knew or should have known that Plaintiff would rely upon the fraudulent misrepresentations and omissions in deciding to enter into the aforementioned

-9-

contractual agreements.

42.     Relying upon the truth of the representations and material omissions as to information regarding his employment, Plaintiff signed the Employment Agreement and Non-Competition Agreement.  Had Plaintiff known Defendants' truthful intentions he would not have left his employment with National Coal and entered into the contractual agreements with Defendants.

43.     Having entered into the contractual agreements with Defendants under said fraudulent circumstances, Plaintiff has been harmed in an amount in excess of the minimum jurisdiction of this Court.

44.     Plaintiff is entitled to recover from Defendants all actual damages, plus punitive damages and his reasonable attorneys' fees and costs.

## COUNT V

### Tortious Interference With Contractual Relations

45.     Plaintiff reiterates and incorporates paragraphs 1-44 as if fully set forth herein.

46.     In the alternative to the above claims, should Madison Capital and Madison Investment not be deemed as Plaintiff's employer (individually or jointly with UAR), then Plaintiff asserts that Madison, acting by and through Gordon, and without a right to do so, has tortiously interfered with Plaintiff's contractual relations with UAR and is therefore liable for all damages flowing from such tortious interference, including damages due Plaintiff under his Employment Agreement, damages due Plaintiff under KRS Chapter 337, including lost wages, liquidated damages, and reasonable attorneys' fees and costs, and punitive damages.

47.     Madison's actions described above constitute tortious interference with

-10-

contractual relations and Madison is thus obligated to pay any and all damages related thereto.

WHEREFORE, the Plaintiff, Ken Hodak, hereby demands judgment against Defendants Madison Capital Management, LLC, UAR GP Services, LLC, United American Resources, LP; UAR GP Holdco, LLC; UAR MLP, LP; and UAR GP, LLC, as follows:

a.   compensatory damages, including past, present and future lost wages, all damages due Plaintiff under his contract, including severance amounts, unpaid expenses, liquidated damages and attorneys' fees/costs pursuant to KRS Chapter 337;

b.   damages for emotional distress and mental anguish;

c.   punitive damages;

d.   attorneys fees and costs; and

e.   any and all other relief to which Plaintiff may appear entitled.

Respectfully Submitted,

WALTHER, ROARK & GAY, PLC

/s/ Beth A. Bowell
Robert L. Roark, Esq.
Beth A. Bowell, Esq.
Erica L. Keenan, Esq.
163 East Main Street, Suite 200
P.O. Box 1598
Lexington, Kentucky  40588-1598
(859) 225-4714

COUNSEL FOR PLAINTIFF

-12-