UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| KEN HODAK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:07-5-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| MADISON CAPITAL MANAGEMENT, | ) | |
| LLC, et al., | ) | **MEMORANDUM OPINION and ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**       **      **      **      ****

This matter is before the Court on Defendants' motion to dismiss [Record No. 14] to which Plaintiff responded in objection [Record No. 17] and Defendants replied [Record No. 18].  This matter is now ripe for review.

Plaintiff Ken Hodak ("Hodak") has named United American Resources, LP, UAR GP Holdco, LLC, UAR MLP, LP, UAR GP, LLC (collectively the "Non-GP Services Entities"), Madison Capital Management, LLC and Madison Investment Partners 24, LLC (collectively "Madison") and UAR GP Services, LLC ("UAR GP Services") as defendants in this action.  Hodak asserts claims for breach of state wage and hour laws, breach of contract, fraud, tortious interference with a contract, and seeks a declaratory judgment that the non-competition agreement entered into on May 12, 2006, is invalid and unenforceable.

In their motion to dismiss, Defendants state that the claims against the Non-GP Service Entities and Madison should be dismissed

for lack of personal jurisdiction.  In the alternative, Defendants argue that the claims against the Non-GP Service Entities and Madison should be dismissed because they were not parties to the pertinent agreements and the facts do not warrant piercing the corporate veil or finding a joint venture.  Additionally, Defendants argue that Plaintiff's claims against Madison for tortious interference and against UAR GP Services for violation of wage and hour laws should also be dismissed.  Finally, Defendants argue that Plaintiff's fraud claim should be dismissed for failure to plead with particularity.  The merits of Defendants' arguments are addressed below.

**FACTUAL BACKGROUND**[1]

In October 2005, Hodak accepted employment with National Coal. From December 2005 through April 2006, individuals representing UAR GP Services and Madison contacted Hodak on numerous occasions seeking to recruit him.  Hodak eventually accepted employment with Defendants as CEO of "the UAR Companies," which the employment agreement defines as United American Resources, LP, UAR GP Holdco, LLC, UAR MLP, LP, UAR GP, LLC, and UAR GP Services, LLC.[2]  While stating that Hodak is hired as CEO of "the UAR Companies," the employment agreement lists UAR GP Services and Hodak as the parties

_____

[1] The following facts are as alleged by Plaintiff.

[2] The entities were previously denoted as the Non-GP Services Entities and UAR GP Services.

2

to the agreement.   Hodak's duties in his role as CEO were to identify, research, and acquire small, privately held coal companies.

On September 29, 2006, Jonathan Baum ("Baum"), counsel for Madison, informed Hodak that his employment was terminated.   The employment agreement contained a severance provision that applied if Hodak was terminated "for reasons other than Cause."   The employment agreement provided that Defendants could only terminate Hodak's employment immediately upon a showing of cause.   "Cause" is defined in Section 9(a)(2) of the employment agreement.   Hodak received no statement of the alleged cause for termination until November 15, 2006.   If Hodak's employment was terminated without the showing of Cause required by the employment agreement, the severance provision applied.   The severance provision entitles Hodak to "a severance benefit equal to the sum of the base salary then in effect and that would otherwise be paid during the Severance Period . . . and an amount equal to the most recent Discretionary Incentive Bonus."   At the outset of his employment with Defendants, Hodak was loaned $100,000 to repay a penalty he incurred as a result of leaving his employment with National Coal. The loan was to be forgiven over time, pending Hodak's continued employment by Defendants.   The severance provision of the employment agreement offered relief from "any remaining loans."

In addition to the employment agreement, Hodak entered into a

3

non-compete agreement with UAR GP Services and received a guarantee from Madison that it would guarantee and/or indemnify Hodak for certain obligations in the employment agreement.

### PERSONAL JURISDICTION

The party seeking assertion of personal jurisdiction bears the burden of proof on such issue.  "When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . ." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996).  To defeat a 12(b)(2) motion to dismiss, the plaintiff need only make a *prima facie* showing of jurisdiction.  *Id.*  Importantly, "a court disposing of a 12(b)(2) motion **does not weigh** the controverting assertions of the party seeking dismissal." *Id.* (internal citations omitted).

When determining whether personal jurisdiction exists over a defendant, "federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Id.* (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th

4

Cir. 1972)).

The crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). This Circuit employs a three-part test to make such a determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe*, 89 F.3d at 1263 (internal citations omitted).

The Kentucky long-arm statute has been construed to reach the jurisdictional limits permitted by the Constitution, thus, the only analysis necessary is whether the requirements of the Due Process Clause are satisfied. *See Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1271 (6th Cir. 1984).

The Non-GP Service Entities have sufficient contacts with Kentucky such that this Court's exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. While the employment agreement lists the parties to the agreement as Hodak and UAR GP Services,

5

the agreement goes on to say that Hodak is employed as CEO of "the UAR Companies," which the agreement defines to include the Non-GP Service Entities.  The employment agreement states that it "is made under and shall be governed by and construed in accordance with the internal laws of the Commonwealth of Kentucky."  Additionally, the employment agreement contemplated Hodak moving to the Lexington area.  With their CEO acting in Kentucky, it is clear  that the Non-GP Service Entities purposefully availed themselves to the privilege of acting in Kentucky.  Hodak's claims arise out of the employment agreement, which represents the Non-GP Service Entities contacts with Kentucky.  The substantial connection between the Non-GP Service Entities and Kentucky makes the exercise of personal jurisdiction reasonable.

Construing the facts in a light most favorable to Hodak, as the Court is required to do when considering a 12(b)(2) motion to dismiss, Madison also had sufficient contacts with Kentucky, such that this Court's exercise of personal jurisdiction over it is reasonable.  While Defendants are correct in pointing out that the facts that UAR GP Services is a wholly owned subsidiary of Madison and that Bryan Gordon ("Gordon") served as managing director of both Madison and UAR GP Services are not, standing alone, sufficient to confer personal jurisdiction, *see Dean v. Motel 6 Operating, L.P.,* 134 F.3d 1269, 1274 (6th Cir. 1998), the additional facts alleged by Plaintiff demonstrate that Madison

6

purposefully availed itself to the privilege of transacting business in Kentucky.

In addition to wholly owning UAR GP Services, a business operating in Kentucky, and having a common director, Madison also exercised significant control over UAR GP Services. Madison and UAR GP Services held meetings in Kentucky at which Madison officials reviewed and directed the activities of UAR GP Services. Hodak's performance was overseen by Kjersten Hatch, a Madison employee, and Baum, counsel for Madison. Notably, it was Baum, not Gordon, the managing director of UAR GP Services, who terminated Hodak's employment. Additionally, Madison routinely paid Hodak for work-related expenses using checks drawn on an account in Madison's name and directed for deposit in Hodak's account in Kentucky. Madison argues that the guarantee agreement it entered into with Hodak is not at issue in the case, and thus, that agreement, which states that it is made under and shall be governed by Kentucky law, cannot serve as a basis on which to confer personal jurisdiction over Hodak. What Madison's argument fails to appreciate is that if it is ultimately determined that Hodak is due severance pay, the guarantee may be of the utmost importance in the event that UAR GP Services is not able to pay the severance due Hodak.

As Hodak's cause of action arises from his termination, the foregoing actions represent Madison's contacts with Kentucky and the basis for this Court's jurisdiction. Defendants motion to

7

dismiss Madison and the Non-GP Service Entities for lack of personal jurisdiction is denied.

## FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint.  The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Pursuant to liberal pleading rules, the complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  When deciding a motion to dismiss, the Court is mindful of the purpose of the complaint, which is to provide a defendant with notice of the claims asserted and the grounds supporting the claims. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Defendants argue Hodak's claims against the Non-GP Service Entities and Madison should be dismissed for failure to state a

claim on which relief can be granted because the Non-GP Service Entities and Madison were not parties to the contracts at issue and because the facts do not support piercing the corporate veil to establish their liability. Defendants contend that Hodak knew Madison was not a party to the employment agreement, which is why he insisted Madison sign the guarantee to indemnify and/or guarantee certain payments due Hodak under the employment agreement. Defendants argue that if Madison were a party to the employment agreement, as Hodak contends, it would have been obligated to provide indemnification, legal fees advances, and insurance under Section 10 of the employment agreement; therefore, the guarantee would have been redundant. Hodak's complaint indicates that he insisted on Madison's guarantee because he was concerned about "the financial viability of the newly-formed UAR group." This admission seems to indicate that Hodak knew Madison was not liable for or a party to the provisions of the employment agreement.

One does not reach the same conclusion, however, with regard to the Non-GP Service Entities. The employment agreement clearly states that Hodak shall be employed as "Chief Executive Officer of the UAR Companies." The employment agreement defines "the UAR Companies" as United American Resources, LP; UAR GP Holdco, LLC; UAR MLP, LP; and UAR GP, LLC. The employment agreement contemplates that Hodak shall be employed by the Non-GP Service

9

Entities, and as such, Defendants' motion to dismiss the Non-GP Service Entities for failure to state a claim shall be denied.

In his complaint, Hodak contends that UAR GP Services is an alter ego of Madison, and thus, Madison's corporate veil should be pierced to hold it liable under the terms of the employment agreement. Absent a clear showing of a company's alter ego status, Kentucky courts are hesitant to pierce the corporate veil. *White v. Winchester Land Development Corp.,* 584 S.W.2d 56, 63 (Ky. Ct. App. 1979) (stating, "[T]he corporate veil should only be pierced reluctantly and cautiously.") (internal citations omitted).

Under Kentucky law, to pierce the corporate veil using the alter ego theory, the following must be established:

> (1) that the corporation is not only influenced by the owners, but also that there is such unity of ownership and interest that their separateness has ceased; and (2) that the facts are such that an adherence to the normal attributes, Viz, treatment as a separate entity, of separate corporate existence would sanction a fraud or promote injustice.

*Id.* at 61-62. Although the preceding elements must be shown before Madison's corporate veil will be pierced to hold it liable on the employment agreement, the determination of whether or not these elements exist "depends upon the innumerable equities" of the case. *Id.* at 62.

The facts upon which Hodak relies in his argument to pierce Madison's veil of corporate liability include: Madison's guarantee of certain obligations in the employment agreement; Madison's

10

payment of Hodak's work-related expenses; Bryan Gordon's status as managing director of both UAR GP Services and Madison; and the potential voting rights of some of the Defendants to elect members of the Board of Managers of UAR GP Services. At this juncture, the Court is hesitant to pierce Madison's corporate veil and hold it liable for UAR GP Services's actions; however, noting that Hodak has alleged facts which, given further discovery, could warrant the removal of the corporate veil shielding Madison from liability, the Court orders that Defendants' motion to dismiss Madison for Hodak's failure to state a claim upon which relief can be granted is hereby denied without prejudice. Hodak shall be permitted to proceed with discovery, but as to Madison, such discovery shall be limited to issues related to piercing the corporate veil. Hodak may also proceed with discovery regarding the existence of a joint venture between Madison and UAR GP Services, which he alleges would subject Madison to liability on the employment agreement.

### TORTIOUS INTERFERENCE

In the event that the Court finds Hodak was not employed by Madison, Hodak asserts that by terminating his employment, Madison, acting by and through Bryan Gordon, tortiously interfered with Hodak's contractual relations with UAR GP Services and is liable for all damages flowing from such tortious interference. Madison contends Hodak's tortious interference claim should be dismissed, as a party cannot interfere with its own contract.

11

Kentucky has adopted the legal requirements for a claim of tortious interference with a contract as set forth in The Restatement (Second) of Torts § 766 (1979).

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (Ky. Ct. App. 2005)(citing Restatement (Second) of Torts § 766).

As a party cannot interfere with a contract to which it is a party, *see Rawlings v. Breit*, 2005 WL 1415356 (Ky. Ct. App. June 17, 2005), it is premature to address the claim of tortious interference until it has been determined if Madison employed Hodak through its alleged alter ego, UAR GP Services. Accordingly, Defendants' motion to dismiss the claim of tortious interference is denied without prejudice.

## WAGE AND HOUR LAWS

Defendants argue Hodak's claim that he is entitled to severance pay, liquidated damages, costs, and attorneys fees for Defendants' alleged violation of KRS Chapter 337 should be dismissed because Hodak is not an employee, as defined by the relevant statute.

KRS § 337.055 provides:

> Any employee who leaves or is discharged from his
> employment shall be paid in full all wages or salary
> earned by him; not later than the next normal pay period
> following the date of dismissal or voluntary leaving or
> fourteen (14) days following such date of dismissal or
> voluntary leaving whichever last occurs.

In addition to the wages to which a former employee is entitled,

KRS § 337.385 provides for other recovery.

> Any employer who pays any employee less than wages and
> overtime compensation to which such employee is entitled
> under or by virtue of KRS 337.020 to 337.285 shall be
> liable to such employee affected for the full amount of
> such wages and overtime compensation, less any amount
> actually paid to such employee by the employer, for an
> additional equal amount as liquidated damages, and for
> costs and such reasonable attorney's fees as may be
> allowed by the court.

KRS § 337.385.

While Hodak's employment agreement did provide for severance

pay in certain instances of termination, and KRS § 337.010 defines

"wages" to include severance pay, Hodak is not an "employee" for

the purposes of KRS § 337.385.  KRS § 337.010 clearly states that

for the purposes of KRS § 337.385, unless the context requires

otherwise, "employee" shall not include, "[a]ny individual employed

in a bona fide executive, administrative, supervisory, or

professional capacity."  KRS § 337.010(2)(a)(2).  In *Healthcare of

Louisville v. Kiesel,* 715 S.W.2d 246 (Ky. Ct. App. 1986), the court

permitted an executive/administrator to recover under KRS §

337.385, despite the language of KRS 337.010(2)(a)(2), finding that

the context required otherwise.  The court did not expound on its

reasoning as to why the context required otherwise, except to say, "it is just as unlawful to fail to pay or to withhold a part of the salary of an executive, administrative, supervisory or professional employee as it would be to do so in the case of any other type of employee." *Kiesel*, 715 S.W.2d at 248.

In a more recent decision, a panel of the Kentucky Court of Appeals rejected the *Kiesel* court's reasoning and ruled that an executive/administrator was precluded from recovering under KRS § 337.385 based on the definition of employee found in KRS § 337.010(2)(a)(2). *Rawlings v. Breit*, 2005 WL 1415356 at *6-7 (Ky. Ct. App. June 17, 2005). Finding that the context does not require otherwise in this situation, the Court elects to follow the lead of the *Rawlings* court and base its decision on the statutory definition of employee. Accordingly, Hodak's claims under KRS chapter 337 are dismissed with prejudice.

## FRAUD

Defendants urge that this Court should dismiss Hodak's fraud claim for failure to plead the alleged fraud with particularity, as required by Fed. R. Civ. P. 9(b). FRCP 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal citations omitted). "The threshold test is

14

whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs [sic] claim of fraud." *Id.* at 162 (internal citations omitted).

In the instant case, Hodak alleged that Defendants fraudulently induced him to enter into an employment agreement that Defendants had no intention of honoring. Hodak specifically points to the provisions of the employment agreement regarding the $100,000 loan and severance pay as the content of the fraud. The times of the alleged fraud were May of 2006 when Defendants interviewed Hodak and May 12, 2006, when Hodak entered into the employment agreement. Hodak alleges that the "place" of the fraud was the location where the contract was entered into. Hodak's allegations of fraud provide the defendants with sufficient notice to allow them to craft an intelligent response, especially considering that the particularity requirement of FRCP 9(b) is to be balanced with the minimal pleading requirements of FRCP 8. ("While FRCP 9(b) requires that fraud be plead with particularity, when deciding a motion to dismiss under FRCP 9(b), a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)).

Additionally, "in meeting Rule 9(b) particularity requirement,

"federal courts must be liberal in allowing parties to amend their complaints"". *Coffey*, 2 F.3d at 162 (citing *Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985)).  Hodak may amend his complaint to state his fraud claim more specifically.  Also, nothing prevented Defendants from filing a motion for a more definite statement, as permitted by FRCP 12(e).  As it stands, Hodak's fraud claim must be based on his allegation that at the time the contracts were entered into, Defendants did not intend to honor the contractual provisions listed in paragraphs 19 and 20 of the complaint.

### CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1) That Defendants' motion to dismiss be, and the same hereby is, **DENIED WITH PREJUDICE**, to the extent that it seeks dismissal of the claims against Madison and the Non-GP Service Entities for lack of personal jurisdiction;

2) That Defendants' motion to dismiss be, and the same hereby is, **DENIED WITH PREJUDICE**, to the extent that it seeks dismissal of the claims against the Non-GP Service Entities for failure to state a claim upon which relief can be granted;

3) That Defendants' motion to dismiss be, and the same hereby is, **DENIED WITHOUT PREJUDICE**, to the extent that

16

it seeks dismissal of the claims against Madison for failure to state a claim upon which relief can be granted;

4) That Defendants' motion to dismiss be, and the same hereby is, **DENIED WITHOUT PREJUDICE,** to the extent that it seeks dismissal of the claim against Madison for tortious interference;

5) That Defendants' motion to dismiss be, and the same hereby is, **GRANTED,** to the extent that it seeks dismissal of the claim of wage and hour law violations by UAR GP Services; and

6) That Defendants' motion to dismiss be, and the same hereby is, **DENIED WITH PREJUDICE,** to the extent that it seeks dismissal of the fraud claim.

This the 14th day of May, 2007.



Signed By:

_Joseph M. Hood_

United States District Judge

17