UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 5:07-cv-005-JMH

KEN HODAK,                                                      PLAINTIFF

V.                          **MEMORANDUM OPINION AND ORDER**

MADISON CAPITAL MANAGEMENT, LLC et al.,                        DEFENDANT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I. INTRODUCTION

On January 10, 2007, plaintiff Ken Hodak ("Hodak"), former CEO of UAR GP Services ("UAR"), filed a complaint in U.S. District Court against defendants Madison Capital Management, LLC, UAR GP Services, LLC, United American Resources, LP; and UAR GP, LLC, alleging that the defendants violated KRS Chapter 337 under which the plaintiff alleges he is entitled to severance/dismissal pay in the amount of $250,000. In addition to his KRS Chapter 337 claim, plaintiff also asserts a breach of contract claim, seeking reimbursement for expenses incurred with respect to a vehicle he purchased. Additionally, plaintiff is seeking declaratory judgment under KRS Chapter 418, to render the Non-Competition Agreement signed by the plaintiff as invalid and unenforceable. Plaintiff also puts forth a claim of fraud, seeking damages resulting from the defendants' alleged use of fraudulent misrepresentations and material omissions. Lastly, and as an alternative to the above claims, on a finding that Madison Capital and Madison Investment are not plaintiff's employer (individually or jointly with UAR), the plaintiff asserts a tortuous interference with contractual relations claim, seeking damages that resulted from the alleged interference. Additionally, plaintiff is seeking damages for

emotional distress and mental anguish, punitive damages, and reasonable attorney fees and costs in connection with each of these claims.

In response to the complaint, defendant UAR filed a counterclaim against plaintiff, alleging that Hodak has breached certain terms of the Non-Competition Agreement he signed on May 12, 2006, and breached his fiduciary duty to GP Services by disclosing confidential information to his present employer, National Coal, concerning the interest GP Services had expressed in acquiring Mann Steel and the Norwest Report.  GP Services seeks compensatory and punitive damages against Hodak for his alleged violations of the Non-Competition Agreement.

## II.  THE DISCOVERY DISPUTE

This matter is before the court on Hodak's motion to compel discovery from Bryan Gordon ("Gordon"), Chauncey Curtz ("Curtz") and Jonathan Baum ("Baum") concerning the answering of specific deposition questions which Hodak asserts, as a result of a waiver, are not protected by attorney-client privilege. More particularly, Hodak requests that Gordon, Curtz and Baum be compelled to answer questions relating to communications regarding the termination of his employment. Hodak also requests that he be awarded attorney's fees incurred relative to the subject motion to compel discovery.

In response, UAR argues that Hodak's motion to compel should be denied because the defendants have neither (1) placed the privileged communications "in issue", nor have they (2) waived the privilege, pursuant to Fed.R.Civ.P. 26(b)(5)(A), through Gordon's deposition testimony. Therefore, for all of these reasons, UAR contends that Hodak's motion to compel discovery should be denied and that it should be awarded its attorney's fees incurred in having to respond to Hodak's motion to compel.

2

**Discussion**

Summarizing Hodak's argument, Hodak asserts that Curtz, Gordon and Baum should be compelled to give deposition testimony pursuant to F.R.C.P. 37(a)(3)(B)(i). Hodak submits that through the deposition testimony of Curtz, Gordon and Baum, the attorney–client privilege has been waived as a result of the protected information being placed "in-issue". In further support of his motion to compel, Hodak asserts that an additional waiver of the attorney-client privilege was established through Curtz and Gordon's deposition testimony in which Hodak asserts they voluntarily disclosed the confidential character of their communications concerning the termination of Hodak. In a nutshell, Hodak argues that Curtz, Gordon and Baum should be compelled to give deposition testimony relating to the reasons for Hodak's termination due to a waiver of the attorney-client privilege created through their own deposition testimony.

Summarizing UAR's argument in response to Hodak's motion to compel, UAR argues that the defendants have neither put the privileged communications "in-issue" nor relied on the "advice of counsel" as a defense. Relying on Rule 26(b)(5)(A), UAR counters Hodak's contention that a waiver was established through Gordon's deposition testimony concerning his conversation with Baum. UAR contends that under Rule 26(b)(5)(A), (1) Gordon was required to acknowledge the existence of the conversation he had with Baum in order to claim the privilege, and (2) Gordon failed to give deposition testimony concerning the specifics of the communication, therefore not establishing a waiver to the attorney-client privilege. For these reasons, UAR submits that Hodak's motion to compel should be denied and that since defendant's position on privilege is

substantially justified and since defendants made an attempt to resolve the privilege issue in good faith, an award of attorney's fees to Hodak would be inappropriate.

## Analysis

### I.

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients". <u>Upjohn Co. v U.S.</u> , 449 U.S. at 383,389. This privileged communication is encouraged so the client may "make well-informed legal decisions and conform his activities to the law." <u>Static Control Components, Inc. v Lexmark Intern.</u>, Inc., Slip Copy, 2007 WL 902273 at 3 (E.D.Ky.2007). Defining the scope of the privilege, the court in <u>Upjohn</u> stated: "The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." <u>Id.</u> at 389.

Hodak asserts that a waiver to the attorney-client privilege has occurred as a result of the defendants placing the protected information "in-issue" or where they relied upon "advice of counsel" in a manner so as to place the protected information in issue. Hodak utilizes <u>Hearn v Rhay</u>, 68 F.R.D. 574,581 (E.D. Wash. 1975), and the factors laid out in that case to demonstrate that an "in-issue" waiver has been established in the present case.

The Magistrate Judge is unpersuaded by Hodak's use of <u>Hearn v Rhay</u>, <u>supra</u>, to demonstrate that an in-issue waiver to the attorney-client privilege has been established in the present action.  In particular, the Magistrate Judge is unpersuaded by Hodak's claim that the "waiver extends to all communications relevant to the issue asserted" by Curtz

4

and Gordon, which in turn would include all communications between Baum, Curtz and Gordon concerning the termination of Hodak.  An implicit waiver of the attorney-client privilege is not triggered by whether or not the communications are relevant to the issue asserted, United States v. Zollin, 491 U.S. 554, 562-63 (1989), for the implicit waiver rule to become applicable, a party must affirmatively use privileged communications to defend itself or attack its opponent in the action. Dawson v. New York Life Insurance Co., 901 F.Supp. 1362 (N.D.Ill.1995). For instance, the court in Harter v. Univ. of Indianapolis, 5 F.Supp.2d 657,665 (S.D. Ind. 1998), found that Harter's state of mind might have been relevant, but the possibility that privileged communications could provide the opponent with relevant evidence is not a sufficient basis for finding a waiver of the privilege.  The deposition testimony of Curtz and Gordon, which relates to communications they both had with Baum, is not used in an affirmative manner to defend or support the termination of Hodak. The extent that the deposition testimony refers to those privileged communications is limited to recognition of the communications with Baum and that Baum provided advice that aided in the termination of Hodak. The communications with Baum lack relevance in this case because they are not used as reasoning or in support of reasoning for the termination of Hodak; those reasons are laid out extensively through the deposition testimony of Gordon.

Assuming arguendo that the Hearn v Rhay, supra, analysis is applicable to the present action, the Hearn court's formula for determining whether an "in issue" waiver has been established contains an additional requirement that the application of the privilege deny the opposing party access to information vital to making their case. Hearn v

Rhay, 68 F.R.D. at 581. The defendants in the present action have stated their intention not to rely on the protected communications in establishing cause for the termination of Hodak; therefore eliminating the vital nature of those communications.

The Magistrate Judge is also unpersuaded by Hodak's assertion that an "in-issue" waiver of the attorney-client privilege was established as a result of the defendants relying upon "advice of counsel" in a manner that placed the protected information in issue. In Rhone-Poulenc v Home Indem Co., 32 F.3d. 851,863 (C.A.3.1994), the court discussed "advice of counsel" and stated "advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." The deposition testimony of Gordon reveals that he sought Baum's advice on the termination of Hodak, but that alone doesn't bring that conversation "in-issue" in the present case. As the court in Rhone goes on to explain, "the advice of counsel is placed "in-issue" where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Id.   As the testimony set out below demonstrates, Gordon defended the termination of Hodak through extensive reasoning without reliance on the protected communications he had with Baum:

> Q:    Who made the decision to fire Ken Hodak?
>
> A:    I did.
>
> Q:    And why was he fired?
>
> A:    He was fired because he was completely and utterly inadequate with respect to the job he had been hired to perform. He did not achieve any of the goals or objectives or milestones which had been agreed upon over

time that he would achieve. It was my feeling that his leadership skills were lacking at best, his industry instincts were unimpressive, his presence both internally and externally was appalling, his preparedness and ability to answer questions was absolutely substandard, and I felt his judgment was poor, and he had completely and utterly lost the confidence of the people who were closest to the project on a day-to-day basis and whose counsel I respected greatly, and had no results to speak of after being teed up with a great deal of opportunity and resources, and I felt that, you know – to use an expression I, felt that he had overpromised and under-delivered in terms of his capabilities, and he was essentially an empty suit.

(Gordon Dep. at pp. 100-101).

And;

> A:  Mr. Hodak had, it turns out, poorly honed deal and negotiating instincts and made a number of ham-handed steps in the process of negotiating the deal…
>
> Q:  Okay. Tell me exactly what you mean by that.
>
> A:  Well, I mean, negotiating is partly a science and partly an art form, and Mr. Hodak was very transparent and very unsophisticated in terms of the way that he interacted with the Marshall Resources principals and telegraphed many of our negotiating positions in a way that was disadvantageous to what we believed was the best ultimate outcome for the UAR companies.

(Id. at 54).

And;

> Q:  What specifically did he do wrong with the due diligence team (referring to Hodak)?
>
> A:  Well, the due diligence project came in late, it came in radically over budget, and it came back that we missed the side of the barn in terms of the preliminary assessment and pricing of the deal. So I would say that at the end of the day, that's a pretty bad result any way you look at it. And you know, you can delegate, you know, authority, but you can't delegate responsibility, and I held and continue to hold Mr. Hodak primarily responsible for the failure of that project and those results.

(Id. at 75-76).

7

In conclusion, the defendants have been careful to note that they have no intentions of relying on the privileged communications Curtz and Gordon had with Baum as support for a showing of cause in Hodak's termination. Therefore, the defendants' use of these privileged communications conforms to the ideal that "[T]he attorney-client privilege cannot at once be used as a shield and a sword." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.1991), and "While the sword stays sheathed, the privilege stands." In Re Lott, 139 Fed. Appx. 658,661 (6th Cir.2005).  As long as the defendants continue to avoid using the substance of the protected conversations with Jonathan Baum as a defense for the termination of Hodak, such privileged communications shall remain protected.

## II.

Hodak also asserts that a waiver of the attorney-client privilege was established through the deposition testimony of Curtz and Gordon in which Hodak alleges they voluntarily disclosed privileged communications they had with Baum. Hodak is basing this claim on Gordon's testimony in which Gordon testified that he relied upon advice and reasoning provided by Baum in connection with his decision to terminate Hodak. Additionally, Hodak references deposition testimony in which Curtz testified that he did not recall whether he made a recommendation on whether to terminate Hodak.

The Magistrate Judge is unpersuaded by Hodak's assertion that Curtz, Gordon, or Baum's deposition testimony regarding the termination of Hodak creates a waiver of the attorney-client privilege. "It is the long established rule that confidential communications

between an attorney and his client are absolutely privileged from disclosure against the will of the client." <u>Diversified Industries, Inc. v. Meredith</u>, 572 F.2d 596,601 (C.A.Mo.1977). Citing confidentiality as the key to the privilege, the court in <u>United States v. Ryans</u>, 903 F.2d 731, 741 n.13 (10th Cir. 1990), stated that "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." In particular the Magistrate Judge is unpersuaded because the deposition testimonies failed to reveal the substance of the privileged communications with Baum.

The deposition testimony of Gordon was limited to a description of the subject matter of the communications he had with Baum, falling short of disclosing the confidential character of those communications. The Magistrate Judge finds instead the deposition testimony of Gordon meets the requirements of Fed.R.Civ.P. 26(b)(5)(A). As seen from the language of Fed.R.Civ.P. 26(b)(5)(A), when a party withholds information otherwise discoverable by a claim it is privileged, the party shall: (1) "make the claim expressly,"(2) "shall describe the nature of the … communications in a manner that, without revealing information itself privileged…, will enable other parties to assess the applicability of the privilege…" Fed.R.Civ.P. 26(b)(5)(A). Gordon's deposition testimony concerning the conversations between himself and Baum referenced the subject matter of the communications (advice from counsel) but refrained from revealing the substance of those communications; the actual information UAR contends is privileged (the particulars of the conversations) was not revealed. The deposition testimony of Curtz was limited to an inability to recollect whether he had made a recommendation one way or the other to

Gordon. Curtz did not disclose information during his deposition testimony which could be viewed as the substance of those privileged communications.

In conclusion,  the deposition testimony of Curtz, Gordon, or Baum failed to reveal the substance of the claimed privileged communications. Without disclosing more than the subject matter of the privileged communications, there has been no waiver of the attorney-client privilege in this case.

### III.  CONCLUSION

In summary, for all of the foregoing reasons, the Magistrate Judge concludes that the defendants did not put the privileged communications "in-issue" nor did they waive the privilege through disclosure of the protected communications.

The court further concludes that the defendant's position on the privilege issue is substantially justified; therefore the plaintiff is not entitled to recover sanctions against the defendant.

Accordingly, **IT IS HEREBY ORDERED** that plaintiff Hodak's Motion to Compel Deposition Testimony from defendant UAR [DE #58] is **DENIED**.

This 5th day of June, 2008.



Signed By:

*James B. Todd*

United States Magistrate Judge