UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| KEN HODAK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:07-5-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| MADISON CAPITAL MANAGEMENT, | ) | |
| LLC, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on the parties' cross-motions
for summary judgment filed by Plaintiff Hodak [Record No. 216] and
Defendant UAR GP Services, LLC (hereinafter, "UAR GP Services")
[Record No. 215]. Responses have been filed [Record Nos. 219,
220], as well as replies [Record Nos. 225, 226].[1] These motions
are now ripe for consideration.

**I.   BACKGROUND**

   **A.   PROCEDURAL BACKGROUND**

   Plaintiff filed suit in this matter on January 10, 2007,
averring in his Complaint that the multiple defendants, including
UAR GP Services, breached an Employment Agreement (Count I) and
committed fraud (Count IV), and that the another defendant, now

_____

        [1]     Hodak has also filed a Motion to Strike UAR GP Services'
Response to his Motion for Summary Judgment [Record No. 221] as
untimely, to which UAR GP Services has responded [Record No. 222].
The Court agrees with UAR GP Services' rationale as for why its
Response was timely filed and shall deny Hodak's Motion to Strike.

dismissed, tortiously interfered with contractual relations, i.e., the Employment Agreement with UAR GP Services, by and through Bryan Gordon's actions (Count V). Additionally, Plaintiff sought a declaration that the Non-Competition Agreement by and between Hodak and UAR GP Services' was overly broad and in violation of public policy so as to be unenforceable (Count III).

By Orders dated May 14, 2007, and January 30, 2008, the Court dismissed Plaintiff's claim for violation of KRS 337.055 by Defendants and for injunctive relief concerning the Non-Competition Agreement between the parties. [Record Nos. 19 and 55.] Plaintiff and the remaining defendants submitted cross-motions for summary judgment [Record No. 87, 90, and 91], and the Court granted summary judgment for the defendants and denied summary judgment for Plaintiff in a Memorandum Opinion and Order dated August 19, 2008 [Record No. 106], dismissing Plaintiff's claim for breach of the Employment Agreement on the grounds that UAR GP Services had cause to terminate Plaintiff's employment because the uncontroverted evidence demonstrated that he had breached his Confidentiality Agreement with UAR GP Services.[2] Judgment was entered on August 26, 2008, and Plaintiff filed a Notice of Appeal on September 22,

---

[2] In the same Memorandum Opinion and Order, the Court also dismissed Hodak's claims for breach of contract for failure to reimburse him for expenditures associated with a vehicle, fraud, piercing the corporate veil, tortious interference with contract, and Plaintiff's request for a declaration that a non-competition agreement between the parties was invalid and unenforceable. [*See* Record No. 106.]

2008 [Record Nos. 110 and 120].[3]

Ultimately, on September 10, 2009, the Sixth Circuit Court of Appeals issued an opinion [Record No. 198] which vacated this Court's Memorandum Opinion and Order [Record No. 106] as to Plaintiff Hodak's claims for breach of contract, as well as vacating the Court's decision to grant attorney's fees and costs to Defendant UAR GP Services [Record No. 129], but affirmed all other rulings. The Mandate issued on November 13, 2009 [Record No. 205], and this Court resumed jurisdiction over the matter. Hodak and UAR GP Services, the remaining defendant, have filed renewed cross-motions for summary judgment, as set forth above, and the issue of breach of contract is again before the Court on those motions. Notably, UAR GP Services asks this Court to consider a Declaration of Bryan Gordon in support of its renewed motion for summary judgment which, according to Hodak, contradicts deposition testimony offered in support of UAR GP Services' original motion for summary judgment. This issue is taken up in the Court's analysis of the pending motions, below.

### B.  FACTUAL BACKGROUND

Having already set out a detailed account of the factual background in this matter in an earlier Memorandum Opinion and Order [Record No. 106], now reversed in part by the Sixth Circuit

_____

[3] Other matters were also taken up on appeal by Plaintiff by separate Notice, but those matters are not relevant to the issue before the Court today. [*See* Record No. 157.]

Court of Appeals, the Court relates only the most relevant facts before it with respect to this Memorandum Opinion and Order.

Plaintiff Hodak was recruited and hired to serve as the chief executive officer ("CEO") of UAR GP Services and several related entities in May 2006. [*See* Employment Agreement, dated May 12, 2006, Exh. 1 to Record No. 87.] The parties' Employment Agreement provided that Hodak's contract could be terminated at any time:

    (1)  without Cause, upon five business days' written notice to Executive; or

    (2)  immediately upon the showing of Cause. For purposes of this Agreement, "Cause" shall mean:

        (i)  the continued and willful misconduct or dereliction by Executive in the performance of his duties (other than any such failure resulting from Executive's incapacity due to a physical or mental disability), after a demand for performance is delivered to Executive by the Board of Managers (which demand shall identify in reasonable detail the facts and circumstances providing the basis for the Board believing that Executive has not performed his duties) and Executive is given a period of not less than thirty (30) days to cure the performance deficiencies;

        (ii) the conviction of Executive by a court of competent jurisdiction of, or any entry of a plea or nolo contendere with respect to a felony or other crime which involves fraud, dishonesty or moral turpitude and which has resulted or is likely to result in material economic damage or otherwise materially adversely affect the Company;

        (iii) Executive shall have refused, after

written notice and being given a period
of not less than thirty (30) days to
obey, any lawful resolution of, or
direction by the Company relating to the
performance of his duties hereunder;

(iv) Executive willfully engaging in
conduct which has resulted or is likely
to result in material economic damage to
the Company;

(v) a material breach of this Agreement,
which breach is not cured by Executive
within 10 calendar days of receiving
notice from the Company of such breach,
or the Confidentiality Agreement executed
by Executive;

(vi) failure by Executive to cooperate in
any internal investigation; or

(vii) an act or acts of dishonesty by
Executive involving the Company or any of
its Affiliates.

[Employment Agreement at §9(a).]

Hodak and UAR GP Services also entered into a Non-Competition

Agreement which contained provisions regarding confidentiality,

specifically providing that Hodak would not "disclose to anyone

'Confidential Information'". [*See* Record No. 89-36 at 2-3.] The

UAR Companies also entered into confidentiality agreements with

acquisition targets once they had signed letters of intent by which

representatives of UAR GP Services and related entities were

forbidden to publicly disclose that the parties were in negotiation

or the specific matters being negotiated. [*See* Record No. 89-37,

Confidentiality Agreement Between UAR and TRI ¶ 3 (Feb. 14, 2006)

("The Receiving Party shall not make any public disclosure, or

permit any of its Representatives to make any public disclosure, concerning the subject matter of this Agreement, the existence of any possible Transaction or the Receiving Party's consideration of a transaction . . . . ").]

Hodak's tenure with UAR GP Services was ultimately short-lived and somewhat rocky. Plaintiff was told repeatedly by Chauncey Curtz, the Chairman of the Board of UAR GP Services, that he must make progress and move things forward, yet Curtz felt that Hodak failed to do so. As time passed, Hodak engaged in activities that may have constituted violations of his Confidentiality Agreement, as when he confirmed to representatives of Thompson Tractor, a Caterpillar equipment dealer, that the TRI deal was in the works. [*See* Record No. 89-31, May 6, 2008 Deposition of Sam Johnson (hereinafter, "Johnson depo.") at 110-12; Record No. 89-42, August 31, 2006 email correspondence from K. Hodak to K. Hatch, et al.] No less, on September 12, 2006, Hodak confirmed to representatives of Tractor and Equipment Company, a Komatsu dealer, that UAR GP Services was involved in negotiations with TRI and Mann Steel. [Johnson depo. at 121.] Johnson informed Curtz of Plaintiff's conversation with the Komatsu dealer, and Plaintiff told Curtz and others about the conversation with the Caterpillar dealer. [*Id*. at 122, Curtz depo. at 92-93.] Curtz continued to express to Hodak his displeasure with how things were going throughout September 2006. Ultimately, Hodak's employment with UAR GP Services was

terminated on September 29, 2006, less than five months after his hire.

Bryan Gordon, Chairman and Managing Director for UAR GP Services, made the decision to terminate Hodak. However, the termination of employment was effected by a telephone call from UAR GP Services' counsel, Jonathan Baum, who admittedly offered no "description whatsoever of what the cause was that the company believed it had to terminate him" during the phone call. [Record No. 87-5, Baum Depo. at 62-64; *see also* Record No. 89-26, December 21, 2007, Deposition of Kenneth F. Hodak, Vol. I (hereinafter, "Hodak depo., Vol. 1") at 227-28.] Nonetheless, Baum informed Hodak that the termination was for cause and further informed Hodak that he had the option of resigning, in which case he would receive a severance package. [Baum depo. at 61-63; Hodak depo., Vol. 1, at 228.] Plaintiff declined the offer of voluntary resignation with a severance package, and his termination was effective immediately. [Baum depo. at 65.]

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), as in effect at the time these cross-motions for summary judgment were filed, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter

of law."[4]   The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on its pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).   The non-movant "must set forth specific facts showing that there is a genuine issue," such that a jury could reasonably decide in his favor at trial. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).   "When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim, as in the present case, Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Edu.*, 106 F.3d 135, 145 (6th Cir. 1997).   Without such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.   In

---

[4]   A revised version of Federal Rule of Civil Procedure 56 became effective on December 1, 2010.   The cross motions for summary judgment in this case was filed prior to December 1, 2010, and are governed by the version of Rule 56 that was in effect at the time the motion was filed. *See Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, *3 n.3 (6th Cir. Jan. 24, 2011).

considering a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party, but it "need not accept as true legal conclusions or unwarranted factual inferences." *Anderson*, 477 U.S. at 255; *Morgan v. Church's Fried Chicken*, 829 F.3d 10, 12 (6th Cir. 1987).

In its Motion, UAR GP Services again alleges that it had cause to terminate Hodak for cause under §§ 9(a)(2)(i) and (iv)-(v) of his Employment Contract due to alleged violations of the parties' Confidentiality Agreement on two occasions, for dereliction of his duties, and because of actions taken by Hodak which undermined its efforts in pursuing acquisition target, TRI. In his Motion, Plaintiff Hodak takes the position that UAR GP Services breached its Agreement with him because it failed to give him five days notice as required for termination without cause under § 9(a)(1) and failed to fulfill its obligation under the Severance term of the Employment Agreement, § 9(d), when it terminated his employment without cause.

For the reasons which follow, UAR GP Services' Motion for Summary Judgment will be denied, and Hodak's Motion for Summary Judgment shall be granted.

## III. DISCUSSION

Hodak and UAR GP Services present to this Court a matter governed by a contract. Specifically, they ask this Court to determine whether UAR GP Services breached or abided by the terms

of its Employment Agreement with Hodak when his employment was terminated. In this regard, the parties do not dispute that their dispute is governed by the Employment Agreement, a copy of which was attached to Plaintiff's Complaint [Record No. 1-1], and that said contract is enforceable with respect to both parties.

The Employment Agreement provides, among other things, that disputes under that Agreement are to be resolved under the law of the Commonwealth of Kentucky [*Id.* at ¶ 19.] Thus, the interpretation of the parties' contract is a question of law. *Baker v. Coombs*, 219 S.W.3d 204 (Ky. App. 2007). "In interpreting the contract, the parties' intentions are discerned from the four corners of the document itself. Absent ambiguity, extrinsic evidence should not be considered[,] and a court will interpret the contract terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Dupont v. Dupont*, No. 2006-CA-002191-MR, 2008 WL 4951777, 2 (Ky. Ct. App. Nov. 21, 2008) (citing *Baker*, 219 S.W.3d at 207; *Hoheimer v. Hoheimer*, 30 S.W.3d 176 (Ky. 2000)). With this in mind, the Court has evaluated the parties' arguments and concludes that UAR GP Services has breached its Employment Agreement with Hodak for the reasons which follow.

A. **UAR GP Services Fails to Demonstrate That It Terminated Hodak's Employment for Cause Because He Violated the Parties' Confidentiality Agreement**

1. **The Court Declines to Consider the Declaration of Bryan Gordon**

As an initial matter, the Court must determine whether the Declaration of Bryan Gordon may be offered to support UAR GP Services' renewed Motion for Summary Judgment. An affidavit that clarifies or fills in gaps in deposition testimony is permissible and may be considered by the trial court. *Aerel, S.R.I. v. PCC Airfoils, LLC*, 448 F.3d 899 (6th Cir. 2006). In other words, a party may supplement "incomplete deposition testimony with a sworn affidavit" where that party was not directly questioned about an issue. *Id*. at 907. This is because a "deponent is under no obligation to volunteer information not fairly sought by the questioner." *Id*. Nonetheless, it is still the law in this Circuit that "a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists...." *Id*.

Hodak takes the position that certain statements in the Gordon's Declaration contradict Gordon's earlier deposition testimony about his reasons for terminating Hodak's employment and that, thus, it would be improper to permit use of the declaration to create a disputed issue of material fact. Specifically, Hodak argues that those portions of the Declaration which state that

disclosures of confidential information by Hodak were "significant factors in my decision to terminate Mr. Hodak," [*see* Declaration of Bryan Gordon, Record No. 215-2, at ¶ 5(b)], are contrary to Gordon's earlier deposition testimony.  The Court agrees.

Gordon was clear concerning the reasons that he decided to terminate Hodak's employment during the course of his February 21, 2008, deposition.  When all was considered, Gordon believed that Hodak's separation was ultimately necessary:

> . . . because he was completely and utterly inadequate with respect to the job he had been hired to perform.  He did not achieve any of the goals or objectives or milestones which had been agreed upon over time that he would achieve.  It was my feeling that his leadership skills were lacking at best, his industry instincts were unimpressive, his presence both internally and externally was appalling, his preparedness and ability to answer questions was absolutely substandard, and I felt his judgment was poor, and he had completely and utterly lost the confidence of the people who were closest to the project on a day-to-day basis and whose counsel I respected greatly, and had no results to speak of after being teed up with a great deal of opportunity and resources, and I felt that, you know – to use an expression, I felt that he had overpromised and underdelivered in terms of his capabilities, and he was essentially an empty suit.

[Gordon depo. at 100-01.]

As deposition testimony was aptly summed up in the opinion of the Sixth Circuit Court of Appeals, where Judge McKeague wrote that Gordon "did not even mention the asserted confidentiality breaches. He was quick and definite in reciting a list of other reasons for

firing Hodak, but assiduously avoided any mention of the confidentiality breaches, claiming attorney-client privilege." [Record No. 198 at 11-12.] When asked whether he had provided "every reason from [his] perspective that [he] fired Ken Hodak," Gordon said, "[n]o, I gave you the gist of why." When then pressed to provide "every reason from your mind that [he] made the decision to fire Ken Hodak," Gordon never stated that confidentiality breaches played a role and merely ascribed "input . . . that ultimately resulted in the final decision to terminate" Hodak to attorney Jonathan Baum and demurred that he was "not prepared to discuss those" reasons because "those conversations are privileged." [Gordon Depo. at 101.] In turn, Baum never testified that confidentiality breaches were a reason for Hodak's discharge.

Considering the absence of concerns about confidentiality breaches in his earlier testimony, it is disingenuous for UAR GP Services to now offer Gordon's Declaration on the grounds that he is offering "additional information" or "clarifying information" for statements already made in his deposition. The Court concludes that Gordon's Declaration directly contradicts Gordon's prior sworn testimony. He was asked to provide every reason that he terminated Hodak's employment, and he was given a full opportunity to enumerate those reasons – speaking at length and without interruption. To omit confidentiality breaches from a well articulated list and to seek to include it two years later by

Declaration is unsupportable.

Even if the Court termed differences between Gordon's deposition and declaration as something less than a direct contradiction but something more than a clarification or gap-filler, the use of the Declaration "constitutes an attempt to create a sham fact issue," which is a fancy way of saying that UAR GP Services has been far too coy, at best, with this set of facts. *Aerel*, 448 F.3d at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). Two years have passed between the deposition and the submission of the Declaration and with those years the opportunity to submit corrections of errata in the deposition transcript and opportunities to seek leave to reconvene the deposition. Looking to the non-exhaustive list of factors used to evaluate such situations articulated by the Tenth Circuit Court of Appeals in *Franks*, 796 F.2d at 1237, the Court notes that Gordon was asked to provide "every reason" for the termination of Hodak's employment, clearly had access to the pertinent evidence at the time of his earlier testimony, as only he could really know why he terminated Hodak's employment, and was not confused about the reasons he articulated such that the Declaration could be said to offer some explanation that would elucidate his earlier testimony.[5] Indeed, Gordon's earlier testimony is unequivocal.

_____

[5] The Court is not able to immediately determine whether Gordon was cross-examined during the deposition, the one other factor listed explicitly in *Franks*.

-14-

Had UAR GP Services come forward with some portion of Gordon's earlier testimony, not placed in the record by the parties during the consideration of the parties' first cross-motions for summary judgment, the Court would agree that UAR GP Services was "doing precisely what the Sixth Circuit expected the parties to do on remand: provide the Court with additional factual support for the finding that termination for cause was proper."[6] Had UAR GP Services come forward with a Declaration that actually clarified or filled in gaps in his earlier testimony, the Court would also agree that it was fulfilling the errand set forth by the Sixth Circuit. That is simply not the case, as articulated above, and the Court declines to consider Gordon's Declaration as evidence on this issue.

> **2. This Court Is Bound by the Sixth Circuit Court of Appeals Decision on Issue of Whether Confidentiality Breaches Were Actual Reason for Discharge**

---

[6] UAR GP Services would have this Court conclude that its motion could also be granted if the Court looked at UAR GP Services' Answers to Plaintiff's Interrogatories, which were available at the time of its initial motion for summary judgment. In its Answer to Plaintiff's Interrogatories, UAR GP Services stated that "Plaintiff breached his obligations under his [Confidentiality Agreement] and willfully disregarded directives from the Board with respect to . . . confidentiality." The linchpin of UAR GP Services' argument is remainder of that response, in which it stated that "[b]ased on all of the information available to him, Mr. Gordon concluded that Plaintiff's conduct was sufficiently egregious to justify termination for cause." From that response, one could infer that Gordon knew about and relied on the alleged breaches of confidentiality at the time he made his decision about Hodak, but his direct testimony – based on his personal knowledge – forecloses any such conclusion.

Without consideration of Gordon's Declaration, the evidence is quite the same as it was the last time this matter was before this Court. The Sixth Circuit concluded that, as the matter stood before this Court on the parties' first cross-motions for summary judgment, "there is no factual support for a finding that the confidentiality breaches, whether material or not, where the actual reason for Hodak's discharge." [Record No. 198 at 12.] "Under the law of the case doctrine, [this] court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 905 (6th Cir. 1996). UAR GP Services has not persuaded this Court otherwise with additional evidence to support its renewed Motion for Summary Judgment, and the Court is bound by the decision of the Sixth Circuit as to this issue. Accordingly, UAR GP Services' Motion for Summary Judgment will be denied with respect to its argument that Hodak was properly terminated for cause for breaching the Confidentiality Agreement between the parties.[7]

---

[7] The Court need not and does not reach the issue of whether UAR GP Services was deprived of the benefit it reasonably expected and whether, thus, the alleged breaches of the Confidentiality Agreement were material.

**B.   UAR GP Services Fails to Demonstrate That a Demand for Performance Required by § 9(a)(2)(i) of the Employment Agreement Was Delivered to Hodak**

UAR GP Services next contends that Hodak's employment was properly terminated under § 9(a)(2)(i) of the parties' Employment Agreement because he was derelict in his duties as CEO. UAR GP Services relies on evidence of the discussions between Hodak and Curtz and between Hodak and Gordon in which Plaintiff was told that his performance was deficient and required improvement. Hodak does not dispute the contents of those conversations or when they occurred. Thus, the question for this Court is whether these conversations are evidence that UAR GP Services provided Hodak with a sufficient and timely demand for performance under § 9(a)(2)(i) of the Employment Agreement. The Court concludes that they are not for the reasons which follow.

Section 9(a)(2)(i) states that cause for termination exists where the employee engages in misconduct or dereliction in the performance of his duties and willfully continues to do so, but only when the following conditions are met:

> . . . after a demand for performance is delivered to Executive by the Board of Managers (which demand shall identify in reasonable detail the facts and circumstances providing the basis for the Board believing that Executive has not performed his duties) and Executive is given a period of not less than thirty (30) days to cure the performance deficiencies.

In support of its position that Hodak received the requisite

notice of his performance deficiencies, UAR GP Services relies on

the deposition testimony of Curtz, as follows:

> Ken and I talked frequently during this period
> [June or July 2006], and I know I expressed to
> Ken, as did other people, concern about the
> fact that the projects needed to be done
> quickly. You know, we talked a lot about what
> needed to be done, who needed to be doing
> what, reporting responsibility, other issues
> and other things that needed to be
> accomplished in order to move the project
> ahead. And I know I expressed concern about
> the pace at which a lot of those things were
> being done.
>
> . . . .
>
> . . . I know I was concerned about the lack of
> a controller. I know I was concerned about
> the lack of a CFO. I know that I was
> concerned about getting the acquisitions that
> we were in the process of negotiating and
> doing due diligence on completed. I know I
> was concerned about getting additional, you
> know, targets lined up, and in the process of
> negotiations, moving ahead so that in the
> event one of these didn't get closed, there
> would be a second plan, a backup. And in
> addition to that, even if we didn't need a
> backup, that there would then be other
> acquisitions in the pipeline ready to go when
> the MLP became a public offering. So we talked
> about all those things. We talked about how
> to do this. We talked about the nuts and
> bolts of who should be doing what. We talked
> repeatedly about the need for confidentiality
> in these negotiations, in these discussions,
> and we, you know, we talked generally about
> the fact that I had real concern that things
> weren't moving ahead as quickly as they ought
> to.

[Curtz depo. at 77-80.]

According to Curtz, he and Hodak also "had a discussion about

whether or not, you know, he would retain his job and whether or not he was able to carry out these duties and whether or not, you know, he was performing what was required of him to perform in order to implement the business plan, yes." [Curtz depo. at 101.] That conversation was had, however, "in the context of [Hodak] leaving the job. . ." at a time when Hodak had asked to meet with him and indicated that he, Hodak, was not sure he could carry out the duties of managing UAR GP Services. [*Id.*] During that conversation it was "discussed whether or not [Hodak] was carrying out his duties and whether or not he was capable of carrying out his duties[,]" but Curtz "never told him he was on the verge of being fired." [*Id.*]

UAR GP Services also relies on Attorney Baum's deposition testimony in which he recounted his knowledge of Curtz's displeasure with Ken Hodak's job performance and Curtz's characterization of the issue raised by his job performance as "engagement level issue, meaning this is so serious that it calls into question how we're going forward and whether we're going forward."[8] [Baum depo. at 25, 41.]

---

[8]     UAR GP Services also argues that Curtz advised Hodak that he was displeased with a disclosure made to Mark Campbell in an email sent on September 15, 2006. [Record No. 89-43]. However, the Court has reviewed that missive and can find no rebuke that might be described as a "demand for performance." The same can be said of the email sent from Curtz to Kjerstin Hatch and Baum on August 30, 2006, in which Curtz mentions that he has had a "very frank conversation" about an unidentified subject with Hodak. [Record No. 89-40.]

None of this evidence demonstrates, however, that a demand for performance was delivered by the Board of Managers that would trigger the provisions of § 9(a)(2)(i) of the Employment Agreement. UAR GP Services sets forth evidence that Curtz raised concerns about Hodak's performance with Hodak, and that Baum and others knew about it. However, there is no evidence from which the Court can ascertain or infer that these statements were being delivered on behalf of the Board of Managers or that they were a "demand for performance" as anticipated by the Employment Agreement.

Further, even if the Court could conclude that these conversations with Hodak were being undertaken at the behest of the Board of Managers under § 9(a)(2)(i) of the Employment Agreement and could constitute a demand for performance as anticipated by the parties' agreement, there is no evidence from which the Court can conclude that these so-called "demands" set forth "in reasonable detail the facts and circumstances providing the basis for the Board believing that Executive has not performed his duties." At best, Curtz's testimony offers only the most cursory sense of what he said to Hodak. Finally, there is no evidence of the amount of time Hodak was afforded for the cure of any deficiencies articulated, which ought to have been not less than thirty days under the contract provision.

In other words, UAR GP Services has failed to establish that it took the steps necessary to terminate Hodak for cause under §

9(a)(2)(i) for dereliction in the performance of his duties.[9] UAR GP Services' Motion for Summary Judgment will be denied with respect to its argument that Hodak was properly terminated under § 9(a)(2)(i) because there is no evidence before this Court that an appropriate demand for performance and time for cure were provided to Hodak.

> **C. UAR GP Services Fails to Demonstrate That Hodak Was Properly Terminated for Cause Under § 9(a)(2)(iv) and (vii) of the Parties' Employment Agreement**

Finally, UAR GP Services argues that Hodak was properly terminated for cause under § 9(a)(2)(iv) and (vii) of the parties' Employment Agreement because Curtz and Gordon had been told that Plaintiff expressed a desire to purchase an interest in TRI for himself and because Plaintiff disparaged the chances of the TRI acquisition being consummated to a TRI executive. Section 9(a)(2)(iv) provides that termination for cause is authorized only if an executive "willfully engag[es] in conduct which has resulted or is likely to result in material economic damage to the Company." It is the latter part of this phrase which interests the Court for UAR GP Services has offered no support for the contention that the conduct upon which it relies had resulted in or was likely to result in material economic damage to itself. Accordingly, its Motion for Summary Judgment fails on this front, as well.

---

[9] The Court reaches no conclusion as to whether Hodak was derelict in the performance of his duties.

**D. Hodak's Motion for Summary Judgment**

Finally, the Court turns to Hodak's Motion for Summary Judgment. He argues that, as UAR GP Service cannot demonstrate that it met the requirements to terminate him for cause under § 9(a) of the parties' Employment Agreement, UAR GP Services has breached the contract by, first, failing to provide him five days notice under § 9(a)(1) since his employment was terminated without cause as well then by failing to provide him severance benefits to him under § 9(d) of the Employment Agreement. For the reasons which follow, the Court agrees.

As set forth above, the evidence does not support a conclusion that UAR GP Services terminated Hodak for cause under the terms of §§ 9(a)(2)(i), (iv), and (v) of the Employment Agreement or for breaching the parties' Confidentiality Agreement. UAR GP Services argues that Hodak must show that Gordon, as Managing Director of UAR GP Services and the person who made the decision to terminate him, lacked a good faith belief that Plaintiff had engaged in misconduct constituting cause for termination. That might be so if UAR GP Service had demonstrated that the decision to terminate Hodak was premised on a belief that Hodak violated the parties' Confidentiality Agreement, had UAR GP Services' Board of Managers actually made a performance demand of Hodak requiring him to cure any deficiencies in performance as an executive, or had UAR GP Services identified how Plaintiff's conduct resulted in or was

likely to result in material economic damage to itself.[10]

While the Court agrees with UAR GP Services that the Sixth Circuit Court of Appeals decision does not direct a ruling in favor of Hodak, there remains no genuine dispute of material facts as to whether UAR GP Services properly terminated Hodak's employment for cause under § 9(a)(2). It did not. Accordingly, the Court is left to conclude that Hodak's employment was terminated without cause under § 9(a)(1) and, even then, without the "five business days' written notice" required by the Employment Agreement since the Court has seen no evidence of such notice and since UAR GP Services has always maintained that Hodak was terminated for cause. [*See* Record No. 1, Complaint at ¶¶ 23, 27, 31; *see also* Record No. 20, Answer, at ¶ 27 (in which UAR GP Services does not deny that no severance payments were ever made to Hodak), 31.]

It follows that Plaintiff Hodak is due compensation under the Severance provision of § 9(d), which entitles him to:

> . . . a severance benefit equal to the sum of the base salary then in effect and that would otherwise be paid during the Severance Period . . ., and an amount equal to the most recent Discretionary Incentive Bonus paid in the February prior to the Executive's termination prorated for the days Executive was employed during the year of separation.

Hodak is also entitled to "medical, dental and vision benefits as

---

[10] There is no suggestion that Hodak was terminated for cause on any of the other grounds listed in § 9(a)(2) of the parties' Employment Agreement.

described in Section 4(f) of [the Employment Agreement] for the Severance Period," and UAR GP Services is to "relieve [Hodak] of any remaining loans under Section 4(c)." In failing to provide these benefits to Hodak in the absence of a proper "for cause" termination, UAR GP Services has breached its Employment Agreement with Plaintiff Hodak. Hodak's Motion for Summary Judgment shall be granted.

## IV.   CONCLUSION

For all of the reasons stated above, Defendant UAR GP Services' Motion for Summary Judgment shall be denied, Plaintiff's Motion to Strike shall be denied, and Plaintiff's Motion for Summary Judgment shall be granted.

Accordingly, **IT IS ORDERED**:

(1)   that Plaintiff Hodak's Motion to Strike UAR GP Services' Response to his Motion for Summary Judgment [Record No. 221] is **DENIED**;

(2)   that Defendant UAR GP Services' Motion for Summary Judgment [Record No. 215] is **DENIED**; and

(3)   that Plaintiff Hodak's Motion for Summary Judgment [Record No. 216] is **GRANTED**.

This the 4th day of April, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge